Good morning, Honorable Justices. I plan to use about seven minutes for my argument and reserve the remainder for rebuttal. Before you begin your argument, and we can not start the clock yet, I'd like you to explain to the court why you did not comply with our September 16, 2025, order requiring you to file a new status report. I have been in a medical issue, so I apologize to the court. If your answer is a medical issue, why don't you proceed with your argument. Thank you, Your Honor. Thank you for granting me this opportunity to represent Mr. Jakes, a Jamaican national with limited education. We can start the clock now. Thank you. As of last Saturday, Mr. Jakes was transferred once again to Golden State Prison in Fresno, California. Although ICE is obligated to provide me with a transfer notice, they failed to do so again. I highlight this issue because the increasing frequency of ICE detainees being relocated nationwide without prior notice to their attorneys, the appropriate courts, or the detainees themselves poses a significant risk of due process violations due to the government's oversights. The issue here is, did the board violate the petitioner's right to due process? Were it sent the briefing schedule to the wrong detention facility? Counsel, before you get to that, the question that we had asked you to address in the September 15 order was, did you ever file a motion, the motion to reopen that you basically told us you filed, did you ever file that with the BIA? So what is your answer to that question? We did. And when I followed up with the court, I was informed that they had no record of it. So as an officer of the court, you are telling us that you filed it by what means? Mail, your honor. It's a paper file. So you mailed it to the BIA, but they have no record of it. That's correct, your honor. Can you tell us approximately when you mailed it? And counsel, if I could just ask you to keep your voice up a little bit. I'm having trouble hearing you. I apologize. That's not what my husband says. It's okay. I can hear you now. May 15th. Okay. Thank you. Of this year? Of this year? Yes, your honor. May 15th of 2025? Sorry, I apologize. In the proof of service of the exhibit you gave us, you say on April 8th, 2024, you served a copy of the motion to reopen upon counsel for the respondent. Sorry, I apologize. We followed up on that day. That's correct, your honor. So April of 2024? Yes. Okay, go ahead. We did an inquiry in May as well of this year. And then we followed up in September. And then just so this court is aware, my client is indigent. This is a pro bono matter. And the government has introduced substantial filing fees in these matters now for motions to reopen. Okay, go ahead. Thank you, your honor. I'm sorry, Judge Thomas, do you have a question? No, I was just going to go ahead and ask a question, which is even if we assume that Mr. Is it Jake's? Am I pronouncing that correctly? Yes, your honor. Okay, that Mr. Jake's didn't properly receive notice. Have you done an adequate job here of communicating to us what the prejudice is? In other words, what exactly are the meritorious arguments that you would plan to make if you prevail here? That the, I mean, I think that Mr. Jake's due process rights were violated by not receiving the initial briefing schedule. And so that was what I was trying to get to. I think that the sole issue is, did the board violate the petitioner's right to due process where it sent the briefings? But counsel, the follow up on Judge Thomas's question. Let's assume we were to agree with you that there was a due process problem here. Isn't the second part of the inquiry, whether he was prejudiced by that, i.e., whether he had some type of meritorious defense that could have led to a different result? And honestly, in your opening brief here, and you didn't file, I don't believe, a reply brief. I see no laid out argument as to what the board did that was erroneous the second time and why. I see a line in your brief that says, one sentence, this wasn't a particularly serious crime. But I don't see any analysis of the board's discussion of its own precedent or anything else which would suggest that your client's failure to get the notice and your inability to file a brief prejudiced you. And the government pointed that out in their opposing brief and you filed no reply. Why wouldn't your failure in your opening brief to tell us the semblance of an argument of prejudice on the merits, why isn't that the end of the matter? Well, I don't think it's the end of the matter because, I mean, individuals rely on the fact that they're going to be responding to a briefing schedule. In this particular case, there was not. The fact that there was no briefing schedule rendered to Mr. Jakes didn't give him a meaningful opportunity. And so he couldn't address. But, counsel, then if you can't articulate prejudice, I mean, what's the exercise then that you're asking us to go through? So, you know, but we agree with you that there was an adequate notice that there was a due process violation. We reverse. We remand that, you know, then then then what happens? I mean, if if you can't articulate prejudice, I'm not sure why we're going through that exercise. Well, in my mind and perhaps this is where I come from, I I mean, the immigration court judge found for Mr. Jakes twice and he addressed, you know, the particular serious crime. And we believe that he'll prevail. I mean, we just didn't have the opportunity to lay out that argument for the BIA. But do you mind if I ask a question? There are two appeals and your client never participated in either. And in the first appeal, the BIA remanded to say, look at drug trafficking. But there but it drew a dissent. And to me, that dissent was notable because it mentioned matter of NAM, which is one of the standards that the board applies for, whether a particularly whether a conviction qualifies as a particularly serious crime. And then later on, the discussion turned to matter of YL. What, in your view, is the correct standard between to apply between matter of NAM and matter of YL? Or is that an undecided issue? Is that is that something that you were planning to bring up? Because in your brief, you said you were going to try to rely on board precedent. I'm trying to understand what board precedent you're looking to. I was and I was going to also distinguish. And in this particular case, Mr. Jakes was a passenger in a vehicle. He did not own the vehicle itself. When the stop happened, there was like 20 pounds of marijuana. It was not his not his vehicle. It was actually a U.S. citizen who had the was driving the car. He did not know this. The drugs were in the back of his vehicle. He had no idea. I think an average person such as myself, if I was going to be sitting with my friend and they were going to drive me somewhere, I wouldn't be saying, oh, let's go ahead and let me check the back of the truck. So what does that got to do? And I think this is following a little bit on Judge Sanchez's question and Judge Thomas's question. What does that have to do with the first and sixth factors of matter of YL, which is what the board relied on? The 20 pounds of marijuana is not a small amount. And even the immigration judge said because of this large quantity, it could affect adversely juveniles. And the board said our precedent shows you have to meet every one of the six. They found two that you didn't meet, that your client didn't meet. You didn't address it in your brief to us. So if we sent this back to the board, what is it that you would say about that? I would reflect back to the DAR, basically the record of proceedings where, you know, we went through the instance of Mr. Jake's, you know, how he was stopped by Utah police in this particular case, as well as what was surfaced. I'm going to ask a more focused question. The board said there must be unusual circumstances that at a minimum one involved a very small quantity of controlled substance. The board said if you don't meet each of one through six, including one that I talked to you about, you lose automatically under our precedent. Why, if you went back to the board, how would you argue to the board that that determination was wrong when the board said 20 or 27 pounds, whichever it is, is obviously not a small quantity. He hasn't argued, there's no evidence here that it's a small quantity. Thus, under YL, he automatically loses. What would be your response to, what is your response to that? I would bring the totality of, you know, the circumstances of Mr. Jake's particular stop into this. I know that, you know, we talk about 20 pounds of marijuana. But in reality, we would want to, you know, point out to the board it wasn't, he had no ownership of this. That was something even the immigration judge found in the DAR. And so we think that, you know, that is an appealable issue that the board can address. Well, Ms. Soll, can I ask this? I tend to agree with my colleague, Judge Bennett, that if Matter of YL were the applicable standard, it seems like your client would have an uphill climb. But that seems to me to be an open question because Matter of YL only applies to aggravated, to convictions for aggravated felonies. And I didn't see the board or anyone conduct some sort of categorical analysis to determine if this conviction under the Utah statute qualifies as an aggravated felony under our Supreme Court's decision in Moncrief. And I think that's what the board in the center was alluding to by mentioning Matter of NAM instead as the applicable standard. So if, and I don't know to what extent you're familiar with either of those precedents, but would you have more leeway in your view if you're arguing under Matter of NAM? Or do you concede that Matter of YL is the right standard that the board should have applied? I wouldn't concede that to anything at this point, Your Honor, without getting into the arguments. But I would sit there and say that because very often, I mean, this is something Mr. Jakes was under the impression, I call it the get out of jail card. He took a plea that rendered him, which he thought was a misdemeanor. And that's something that needs to be addressed. He was under the impression that he was not an aggravated felon. So I would argue to the former. And I'll ask opposing counsel some of these same questions. But is it enough? You were arguing also for a presumption of prejudice. Can you speak to that? What is it about these factors in this case where he was not allowed to participate in these appeals that tell us that we should presume prejudice? Because I haven't been able to see any case law one way or the other when it's the government appealing. Presumption of prejudice usually applies when there's ineffective assistiveness, and it's often not applied at all. So why do you think a presumption of prejudice should apply here? Well, I think that there is some case law where, when we were looking at it, when I look at a case like Vasquez-Bostak 349 FRD 333, the court acknowledged that the delays in the bond appeal could violate due process rights by exposing detainees to unnecessary harm. With that reasoning, I think that, similarly, the absence of a briefing schedule could result in unreasonable delays, further infringing on a detainee's due process rights. I mean, that's the rationale that we're going with. And I think that this court, in the past, in Hernandez v. Sessions, the court waived even prudential exhaustion because the legal question it issued did not require an administrative record for resolution. And so we're going along those factors. And I think that, you know, because the Fifth Amendment was violated, I think that, you know, there is an expectation that an indigent client or any client, for that matter, should have a briefing schedule. And not getting a briefing schedule is undue prejudice. I mean, for me, that's part of what an individual relies on. Counsel, you've exhausted your time. If my colleagues don't have any more questions right now, we'll give you some time for rebuttal. We took up a lot of your time with questions. Thank you, Your Honor. May it please this court. My name is Andrew Olivera on behalf of the respondent, the Attorney General of the United States. The board determined that Jake's drug trafficking conviction constituted a particularly serious crime, rendering him statutorily ineligible for withholding of removal. To address Judge Sanchez's question, the immigration judge in the first hearing determined that the conviction was an aggravated felony, which rendered him statutorily ineligible for asylum and cancellation of removal. And that determination was never contested at any point until now. Do you have that record set for that? Pardon me, was that your honor? Do you have a record set for where the IJ made that finding? Not off the top of my head. Okay, I can track it down as well. I believe the board addressed it in its first decision is what they noted that the asylum and cancellation had been waived. I think Judge Thomas. I'm sorry. I mean, I do want to eventually get to the to the marriage, but I wanted to start out with just this due process issue. Are you able to tell us definitively where where Mr. Jocks was being detained when the briefing materials for the second appeal were sent to him? The record suggests that he was still detained at the night County Detention Center on Siri Avenue. DHS filed the change of address on June 14th. And admittedly, they failed to check the box exactly when he was moved from my county to Nevada Southern. However, there's nothing in the record to suggest that he was moved prior to the issuance of the briefing schedule because DHS. Well, but it seems unclear. I mean, I agree with you. There's nothing to suggest that he was moved, but there's also nothing to suggest that he wasn't moved. It just seems confusing, given what was filed. Correct. I would note that the DHS mailed the brief to my county. And they didn't change the address until after the briefing after the briefing deadline had been completed. So there's nothing to establish that that the board mailed the briefing schedule to the wrong address. OK, but I mean, this was Judge Thomas's question, but after the briefing schedule, the notice of appeal, those all went to night to night county. Is that what you were saying? Correct. But then DHS files the most recent notice to EOIR that he has been at this Mesquite Avenue address in par up Nevada for the last since October 6, 2021. And that was the last filing to EOIR. So why doesn't that indicate that he was actually in a different location this entire time? Because it's simply just from the record. It just a it seems that they just filled the form out incorrectly. They didn't put the correct transfer date, but they didn't put anything for the transfer box at all. Correct. And that admittedly, it does make it confusing. And that's why we can't. Why, as we argue, the question should be dealt with by the board in the first instance through the motion to reopen. But why doesn't it just establish I mean, doesn't that at a minimum establish a due process violation? Because if there's a confusion as to where he might be in the government's in the best position to understand where he might be, is notice reasonably calculated if there's no follow up as to where he should go as to whether whether things should be served? Well, the Department of Homeland Security, which had him in custody, served him at they filed their notice of appeal and they filed his they filed an address form for him, indicating that he was at Nye County. The board subsequently served the briefing schedule to Nye County. DHS filed their brief on June 5th and mailed it to Nye County. Only after that, after the briefing deadline had elapsed, did they file the change of address, saying that he was at Nevada Southern Council? Given, I think, the evidence that or some evidence that this motion was never filed with the board, couldn't the panel proceed here to get to the merits, perhaps assume arguendo that there was a due process violation and then proceed from there? Isn't that a permissible way we could handle this? Well, we did argue for the due process and the merits. We are on the alternative. We do think that a motion to reopen, whether it was or was not filed, is the appropriate course because Jake's raises a factual issue where he was detained, and that should be best addressed by the board. But what what would that mean in a circumstance where this has been fully briefed? It's before us now. There's no evidence that the board ever received this motion. And given that, there's nothing that is going to indicate that the board is going to rule on it. So and although this issue has been live now in this court for three months, there's been no new filing of any type of motion. So what is it that you're suggesting we would do? Just hold this case open. No, Your Honor, we we request that this court dismissed or excuse me, deny the petition for review. On what basis? On a lack of exhaustion. Exhaustion of what? The due process. Yes. We believe that the board is in the best position to address this question. Whether the motion is pending before the board ultimately is not dispositive because, as this court explained in Fajardo, Jake's can still file a motion to reopen and the board can adjudicate it and then file a petition for review to determine whether the board abused its discretion. Mr. Olivera, let me just say, so the DHS has a legal obligation to update EOIR with the latest, where the detainee is placed and what detention facility. Is that not right? Correct. And the most recent the most recent filing was the June 14th one that said he had been at Mesquite since October 6, 2021. And so the board receiving that wide, I guess to me, this doesn't seem like a factual dispute, but more the due process analysis is did the government take reasonably adequate steps to do something further if they thought that notice had not been perfected or that of the appeal of the briefing schedule of the government's brief. Why the government didn't take further steps to verify where he actually was and that he had received these things. Well, the DHS did because they repeatedly filed with the board that he was at Nye County. No, but the most recent one was June 4th. Isn't do you agree that that's the last filing from DHS to the board? Yes. Okay. And that's the most recent one. And it's the it's not Nye County. It's the Mesquite address. Yes. And so the board is now in the possession of this information that DHS believes this person has been at Mesquite for the last two years. And so all of these filings have gone to the wrong place, but no one did anything after that. Well, Your Honor. So why is it a factual issue and not a due process violation? Well, it's a factual issue to determine whether there was an error of service. But there but there's no dispute that even when the board is armed with information that he might actually be somewhere else for two years, the board doesn't take any further steps, nor does DHS. Well, DHS had him in custody. That's why they served him at Nye County. Then why was June 14th filed? Because he moved from Nye County to Nevada Southern because in his motion to reopen he and it's not in the administrative record, but it's in the docket 16. It's the exhibit. He says that he was transferred from he doesn't give a date and he doesn't give specifics, but he was transferred from one facility to another because he was having problems at that original facility. He said he got assaulted. But isn't that the but I'm sorry. It seems to me that the problem is that, right, we don't know. We don't know when that transfer might have occurred because we don't have anything filed by by by the government. But I wanted to ask a different a different question. Assuming just that we that we disagree with you and that we think there's a due process violation here, should we presume prejudice? And if not, why? Why not? If we just if we find that he just did not have the ability to participate in the appeal because he didn't get notice, why can't we presume prejudice? No, you can't presume prejudice, your honor, because, as we say, the board fully considered the issue before it on appeal. They didn't simply just summarily affirm or, in this case, reverse and deny or issue a removal order. It was a DHS appeal. They fully addressed the issue on the merits and issued a full decision. But why isn't that prejudicial if they're fully addressing the merits based on one party's view of things and not the other? If someone is shut out of the appellate process altogether because they weren't given proper notice and we're discussing this on the on that's on the prejudice side of it. Why isn't that presumptively prejudicial? Because that's not this court's case law. This court has held that as long as there's been a. And that the issue has been fully addressed and the board fully addressed matter of why. And then before this court, Jake's does not in any way, shape or form address the the issue of prejudice. So counsel or wouldn't wouldn't that mean what you just said, if that's correct? And we agreed with you. Wouldn't that mean that even if there were a presumption, the government has rebutted it? That is correct. Why don't you address that? Why don't you? Why don't you go past? Why don't you tell us why there's no prejudice here that the government has shown? And if that's your view, yes, we did argue that even if there was a presumption of prejudice, that the presumption was rebutted because Jake's is his conviction, which is uncontested, is a drug trafficking conviction, which pursuant to matter of while there is a presumption that it is a particularly serious crime. Can I can I stop you? Why? Because that not contested goes to this due process issue. How could it have been contested if he didn't participate in the appeal in the first appeal, for example? Well, he didn't contest the conviction before the immigration judge. There's there's no question that he was convicted. Right. But did the immigration judge of the BIA ever conduct a categorical analysis to determine whether the Utah statute matches to the INA? The immigration judge did determine that it was an aggravated felony. But did it conduct a categorical approach analysis? I don't believe it was the most detailed analysis, but Jake's never appealed that determination. Counsel, I'm just I'm asking a very specific question. Did it conduct a categorical analysis? I believe no. He determined that it was an aggravated felony without without conducting the analysis. Right. And under the Supreme Court's decision in Moncrief, you don't get to an aggravated felony until there's been that categorical analysis. Right. But was that is that right? But he wasn't being found for being an aggravated. It was the he was it goes to his question of relief and he has to demonstrate that it's not an aggravated felony. Did he ever ask in any proceeding for a determination on whether this was a categorical match or not? No, he did not. And here again, we're dealing with a conviction for 20 pounds. Right. Correct. And would that be a match to the CSA? Yes, Your Honor. And what other factors are there that would go into it? Beside whether it would be a match to the CSA. So they would have to you would look at whether it was the transportation elements were in there, whether they were. Elements of the conviction. But again, that's not the question. Isn't whether it was an aggravated felony here because the. Well, but I think it is because matter of why. Do you agree that matter of why only applies when it's an aggravated felony conviction? Well, it applies to drug trafficking convictions. For a matter of why. So as I understand it, matter of NAM and Fentescu factors apply normally. But there's a different path when it is a drug trafficking, aggravated felony conviction. And that's the matter of why. Is that right? Well, for particularly serious crime, it's not they don't always have to be aggravated felonies. It's it's considering that's the whole point of the particularly serious crime that it considers. It's not just the bar on aggravated felonies. That's that's not what the attorney general's opinion, a matter of why L says or our decision in park. It's as a matter of why L applies when there's been an aggravated felony conviction for drug trafficking. Otherwise, you apply the matter of NAM factors, which is what the dissenting judge in the first BIA appeal talked about. Well, pursuant to well, I mean, I guess so just as I see this case, the reason why I see prejudice and you can push back on these points. The reason why I see prejudice, even if you take away presumption of prejudice, is that there is a possibility of a different outcome. If you were allowed to argue before an appeal that he was not allowed to participate in that his is not that matter of NAM should apply to the particularly serious crime determination. Not matter of why L, because his was not an aggravated felony drug trafficking conviction. And under the categorical approach, you look at the least of the crimes, not necessarily his crime to determine if there's a categorical match to the state law. But he's never challenged the immigration judges determined that it was an aggravated felony. But he couldn't if he was not given that opportunity before an appeal. But he never appealed. Well, he never but he also didn't participate in the government's appeal. But he but he as this court is held, he has to file a cross appeal to challenge anything on the immigration judge that ruled against him. But he did challenge. Well, he is saying here that he wants to rely on board precedent in order to defend the decision to find that his conviction was not for not particularly serious crime. So he is raising that issue here. But it just seems a little odd to argue that he didn't challenge something when the government shut him out of the appeal. But the government didn't shut him out of the appeal. He was fully aware of the immigration judge's decision. And he did not file an appeal of the immigration judge's decision denying him asylum, cancellation of removal or convention against torture. So he certainly was aware of what the immigration judge did. Yes. And including the characterization of the crime. Yes, Your Honor. And he could have certainly appealed that. Yes, Your Honor. And this court does have published precedent saying that when DHS appeals, the alien is required to file a cross appeal if they want to challenge an adverse aspect of the immigration judge's decision. Right. Right. But but here he wasn't even served with a notice of appeal. So, you know, some of this discussion has been about a briefing schedule. But was he even aware that an appeal was taking place by the government? In either the first or the second appeal? Yes. He was served at Nye County with the notice of the notice of appeal. But of course, what's under debate is whether he was even at Nye County at that time. Right. I mean, that is petitioner's allegation. It's also the June 14th notice to EOIR that he wasn't at Nye County. Correct. But if he wasn't there, on what basis is he filing a cross appeal? He doesn't I mean, he doesn't know the appeal is happening. Well, he doesn't allege that he did not receive the notice of appeal. He just simply says that he didn't receive the briefing schedule. At no point does he suggest that he didn't know that there was an appeal. So the idea that he couldn't that he was unaware of what the immigration judge held is not supported by the record. Well, so if he doesn't know there's a briefing schedule, he doesn't know then that the opening brief has been filed to which he is supposed to file his own appeal. I mean, I think your argument requires us to assume that he actually had had had notice, but maybe we'll just leave it there. All right. Thank you, counsel. We'll we'll give you three minutes for rebuttal. Thank you. Mr. Jakes is an indigent client. He has very limited education. He was under the care of DHS. And if they had the ability to produce a notice or the briefing schedule, which he hasn't received, it wasn't up until we we were involved that we questioned him about these issues. We also think we we disagree with, you know, counsel that he had noticed. Because he fundamentally wants to have his rights and his this conviction addressed before the Board of Immigration Appeals. This court, you know, I mentioned earlier, has the ability where it's emphasized that prudential exhaustion is not jurisdictional and it can be waived if administrative remedies are inadequate, futile or would result in irreparable harm. I think Mr. Jakes is that example. He would have had the ability to at least address these arguments with the Board of Immigration Appeals. In a more recent case that I was able to pull up, Dos Santos v. Noam, while it is a district court of Massachusetts, it's a 2025 case. It said that a useful record for a subsequent judicial consideration, especially in a complex technical or factual context, in these circumstances where Dos Santos' liberty interests weigh heavily against requiring administrative exhaustion, waiver of exhaustion is warranted. And that's what we're going to ask for here by this court as well. The potential for irreparable harm to the petitioner, who is Mr. Jakes, is in the form of continued, you know, detention and his inability to address his due process rights before the Board of Immigration Appeals. Here, the legal question at issue does not require an administrative record for resolution. I think that, you know, we rest on the fact that this case should be remanded to the Board. We think that these due process rights, for the very reason that I mentioned in my opening, was that we're in a very interesting time in our country where clients are being moved around. Notices are not being timely produced to even the attorneys or even the clients themselves. They don't have any idea when they're going to be moved. Why don't you conclude, counsel? So, we request that, you know, you remand this case back to the Board. We thank counsel for their arguments. The case just argued is submitted.  With that, we'll move to the final case on today's argument calendar, United States v. Burns.
judges: BENNETT, SANCHEZ, THOMAS